IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| HEIDI BROWN, and HEIDI BROWN as Parent and Next Friend of TREVOR RHINER; and CYNTHIA CHRISTIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>DR. PAUL KERKHOFF; KERKHOFF CHIROPRACTIC; THE MASTERS CIRCLE; and JOHN DOES,<br><br>    Defendants. | No. 4:06-cv-00342 – JEG<br><br>**O R D E R** |

This matter comes before the Court on the Motion for Class Certification pursuant to

Federal Rule of Civil Procedure 23 brought by Plaintiffs and Putative Class Representatives

Heidi Brown (Brown), as parent and next friend of Trevor Rhiner (Rhiner), and Cynthia

Christian (Christian) on behalf of all persons similarly situated (collectively, Plaintiffs).

Defendants Dr. Paul Kerkhoff (Kerkhoff), Kerkhoff Chiropractic, The Masters Circle, Inc. (The

Masters Circle), and John Does[1] (collectively, Defendants) resist.  Defendants have also filed a

Motion to Strike Expert Testimony, alleging that the testimony of all three chiropractors cited by

Plaintiffs as experts fails to satisfy the requirement set forth in Federal Rule of Evidence 702.

Plaintiffs resist.  The parties have not requested a hearing, and the Court finds that none is

required; accordingly, the record is completed and ready for disposition.[2]

---

[1] Plaintiffs have defined "John Does" as those chiropractors in Iowa "who were members of Markson Management, The Masters LLC or The Masters Circle, Inc."  Pls.' Mot. Br. 19, ECF No. 161-1.

[2] The Court regrets the time it has taken to process the pending matter, which resulted from an unfortunate combination of collateral workload, the unique nature of the remaining claims herein, and evolving law that greatly impacted the Court's analysis.

# I.    PROCEDURAL[3] AND FACTUAL BACKGROUND

In response to the Court's August 2007 Order,[4] <u>Brown v. Kerkhoff</u>, 504 F. Supp. 2d 464, 554 (S.D. Iowa 2007), Plaintiffs filed their Fourth Amended Complaint and National Class Action,[5] raising claims of civil conspiracy and unjust enrichment against Defendants.[6]   These claims are predicated upon Plaintiffs' contention that "The Masters Circle is a worldwide organization which trains chiropractors on methods of 'targeting, leveraging and closing' the sale of chiropractic services to new patients" and "teaches 'scripts,' various leveraging and high pressure sales tactics to its chiropractors to be used to convince patients to agree to pay for chiropractic care."   Fourth Am. Compl. ¶ 1, ECF No. 64.   Plaintiffs allege that chiropractors pay The Masters Circle a monthly fee in exchange for the use of their scripts and tactics that "enable the chiropractors to build their practice and obtain personal wealth."   <u>Id.</u> ¶ 2.   According to Plaintiffs, these practices unwittingly draw patients into "a nationwide conspiracy by which chiropractors use[] unethical and misleading practices to induce patients into agreeing to pay for chiropractic

---

[3] The cumbersome procedural history of this case is amply delineated in prior rulings of this Court.   <u>See, e.g.</u>, <u>Brown v. Kerkhoff</u>, 504 F. Supp. 2d 464 (S.D. Iowa 2007).   Accordingly, only those matters that remain at issue are recapitulated in the Court's present Order.

[4] In <u>Brown v. Kerkhoff</u> 504 F. Supp. 2d 464, 554 (S.D. Iowa 2007), this Court granted in part and denied in part Defendants' motion to dismiss for lack of personal jurisdiction, determining that this Court could exercise personal jurisdiction only over the remaining, above-named Defendants.   The Court also granted in part and denied in part Defendants' motion to dismiss for failure to state a claim holding that, while Defendants were entitled to dismissal on some claims, Plaintiffs had "stated a claim for civil conspiracy against Kerkhoff and The Masters Circle, with an unjust enrichment claim against Kerkhoff as the underlying actionable wrong."   <u>Id.</u>

[5] Despite the Court's direction in its August 2007 Order, Plaintiffs have failed to comply with local rules and have erroneously captioned their present complaint as the "Fourth Amended Petition and National Class Action."   ECF No. 64.   The Court will refer to this document as the Fourth Amended Complaint.

[6] As a general point of departure, "the substantive allegations in the plaintiff's complaint are accepted as true," <u>see</u> <u>Walsh v. Principal Life Ins. Co.</u>, 266 F.R.D. 232, 239 (S.D. Iowa 2010) (and cases cited), but are examined within the context unique to the class certification question.   <u>See</u> <u>infra</u> Parts II.B., II.B.1.

2

care" thereby depriving said patients "of their right to make informed medical decisions based upon unbiased medical advice." Id. ¶ 3.

Rhiner allegedly first encountered these practices in December of 2001, when, at the age of fourteen, he went to Kerkhoff Chiropractic with his mother while seeking treatment for pain in his lower back and legs. After examining Rhiner and administering x-rays, Kerkhoff, a doctor of chiropractic, licensed to practice in Iowa, requested that Brown and Rhiner's father return for a report of findings and attend a new patient workshop. At the report of findings, Kerkhoff diagnosed Rhiner with a "C" curvature of the cervical spine and scoliosis, and opined that these conditions, without treatment, could result in severe arthritis by Rhiner's mid-twenties and potentially confine Rhiner to a wheelchair. Kerkhoff recommended that Rhiner forego playing sports and suggested, and attempted to sell, a year of aggressive chiropractic treatments, noting that up-front payment entitled Rhiner to a discounted price. Rhiner's parents agreed to pursue treatment but refrained from entering into a pre-payment arrangement.

The initial treatments provided Rhiner relief, but Kerkhoff recommended further treatment. Brown became concerned by some of the methods employed during the appointments, so she sought a second opinion from an orthopaedic surgeon, Dr. Jeffrey Farber (Dr. Farber). Dr. Farber, having reviewed Kerkhoff's x-rays, allegedly advised Brown that Rhiner did not have scoliosis, did not require a year of chiropractic treatments, and could participate in athletic activities.[7] Dr. Farber purportedly informed Brown that the methods employed by Dr. Kerkhoff, specifically the use of traction, could be harmful to Rhiner. To alleviate Brown's concerns for

---

[7] Dr. Farber's notes reflect that he found "a little bit of an abnormality up around the right side of T4," but beyond that, "the spine really looks very good on both the [anterior posterior] and the lateral." Farber's Med. R. for Rhiner, Pls.' Ex. 1 at 26, ECF No. 177. He also noted that Rhiner's neck "does have a bit more kyphosis than the average patient of his age." Id. However, Brown testified that Dr. Farber informed her that Rhiner had a "slight curvature that was normal within his range for being fourteen." Brown Dep. 133:12-13, Pls.' Ex. 2, ECF No. 163-1.

her son, Dr. Farber ordered a subsequent MRI and recommended short-term physical therapy[8] as a preventative measure and anti-inflammatory medication.

Following Dr. Farber's diagnosis, Brown discontinued Rhiner's chiropractic treatment and sued Kerkhoff in a state malpractice action, which prompted discovery of information underlying the present suit. During the course of Rhiner's treatment, Kerkhoff allegedly submitted claims to Rhiner's insurance carrier seeking payment for the diagnosis and treatment. According to Plaintiffs, Kerkhoff received payment for some of these treatments from Rhiner's insurance carrier.

Christian sought treatment from Kerkhoff on September 22, 2004, complaining of neck and lower back pain. After an examination and x-ray, Kerkhoff requested that Christian return in a week for his report of findings, at which time he allegedly diagnosed Christian with a loss of curvature in her cervical vertebrae and insisted that intense chiropractic services were needed, without which she would be unable to hold her head up when she got older. According to Christian, Kerkhoff encouraged her to purchase at least six months of chiropractic care up-front.[9] When Christian told Kerkhoff that she could not afford the recommended care, Kerkhoff purportedly encouraged her to secure a bank loan to pay for the necessary treatments, advice which Christian followed. After a few treatments, Christian's neck improved; however, Plaintiffs argue Kerkhoff continued to use misleading and unethical practices taught by The Masters Circle to pressure Christian to pay for continued treatment. When the six months of treatment were

---

[8] Dr. Farber opined in his medical notes that the physical therapy he was suggesting was "probably not that much different than what the chiropractor does but to me it is a whole lot more sensible and economical." Farber Med. R. for Rhiner, Pls.' Ex. 1 at 27, ECF No. 177.

[9] Previous Orders of this Court, reflecting the allegations made by Plaintiffs in prior complaints and supported by Christian's deposition testimony, state that Kerkhoff encouraged Christian to purchase nine months of chiropractic care. In their Motion to Certify Class, Plaintiffs allege that Christian was advised by Kerkhoff and actually purchased up-front only six months of treatment. This latter factual telling is supported by the record, which indicates that Christian began treatment in September 22, 2004, and terminated the arrangement in March of 2005. Kerkhoff Med. R. for Christian, Pls.' Ex. 7 at 20, 26-28, ECF No. 178.

completed, Kerkhoff allegedly attempted to sell Christian another long-term package, which Christian refused. Following her final visit with Kerkhoff, Christian joined this class action.

Plaintiffs aver that, in both circumstances, the long-term care plans prescribed by Kerkhoff, which in Christian's case involved a recommended pre-payment plan, were medically unnecessary. They further allege that Kerkhoff, when prescribing this care, was following the principles taught by The Masters Circle, though he at no time disclosed to his patients his association with this group or any of its alleged predecessor entities. Plaintiffs have brought suit against Defendants and contend that Markson Management Services, Inc. (Markson Management), and The Masters, LLC (The Masters), are unnamed co-conspirators. While Markson Management and The Masters are no longer operational companies, Plaintiffs assert that the two companies were predecessor entities and have comparable teachings, scripts, and purposes to those of The Masters Circle. In support of this contention, Plaintiffs reference Alan Rousso's (Rousso) affidavit, where Rousso attests that he has served as a coach for each of these entities since January of 1990.

Markson Management was founded in 1980 by Lawrence Markson, D.C. (Markson), as a practice management group for chiropractors to attain "first class living and large successful chiropractic practices." Chiropractic Practice Management (Markson Management Manual), Pls.' Ex. 12 at 8, ECF No. 167-1. Kerkhoff was a member of Markson Management for a short time in 1996. Markson discontinued Markson Management on December 31, 1996, and, in January 1997, became a partner in The Masters.

The Masters introduced its members to a trademarked teaching method called "Identity-Based Consulting." The Masters 1998 Seminar Leaflet, Pls.' Ex. 18 at 3, ECF No. 170-2. The Masters coined the term "Masters Circle," which it used to describe the group of its most outstanding members. Markson Suppl. Aff. ¶ 15, Pls.' Ex. 17, ECF No. 170-1. The Masters then set up a domain name, "www.themasterscircle.com," which it used through December of 2000.

5

Id. ¶¶ 19-22.  Kerkhoff was a member of The Masters from 1997 through 1999, except for a short lapse in membership from November 1, 1997, to December 31, 1997.

On or about August of 2000, Markson launched a third company, The Masters Circle, a New York corporation with its principal place of business in New York, with co-founder Dennis Perman, D.C.  The Masters Circle immediately merged with New York-based Power Practice, Inc., and added Robert Hoffman, D.C., as a shareholder.  The Masters Circle provides its paying members personal and professional coaching in leadership, personal development, and chiro-practic practice management.  Having adopted the domain name "www.themasterscircle.com" formerly used by The Masters, The Masters Circle also assumed the trademark previously employed by The Masters, although Defendants have provided no evidence of a legal transfer of this property between the two entities.  The Masters Circle additionally used the same address[10] as The Masters and the same telephone number as the one formerly used by Markson Manage-ment and The Masters.  The Masters Circle distributes a manual copyrighted in 1999, prior to The Masters Circle's incorporation, entitled "Masters Guide for the 21st Century Chiropractor" (The Manual), which contains similar teachings to and some verbatim phrasing from the Markson Management Manual.

In July of 2004, Kerkhoff became a member of The Masters Circle.  Plaintiffs allege that at all times relevant to the present dispute, Kerkhoff was following the common teachings and practices of The Masters Circle and its predecessor entities.  Kerkhoff testified that he pays The Masters Circle $650 per month for his membership and provides the company with a monthly statistical update on his practice.  As a member of The Masters Circle, Kerkhoff is asked to follow the teachings of The Masters Circle, including its "scripts," which chiropractors are instructed to memorize and Plaintiffs allege The Masters Circle's members use to persuade

---

[10] The address listed for both entities was 3000 Marcus Avenue, Suite 3E6, Lake Success, N.Y. 11042.  Markson Management was located at 2001 Marcus Avenue, Suite 1983, Lake Success, N.Y. 11042.

patients to start and continue care. The Masters Circle also provides a number of services, including one-on-one coaching, access to the "Members Only" portion of its website, educational products, written and audiovisual materials, monthly practical open discussions, and access to a digital bulletin board. Kerkhoff first received a manual while a member of Markson Management, has received updated materials, and has used The Masters Circle's texts and scripts in the operation of his business.

Plaintiffs allege that some of the practices taught by The Masters Circle and used by its members are unethical and unlawful. Further, Plaintiffs contend that The Masters Circle members did not disclose the use of these services and practices. Plaintiffs assert that, as a result of the joint agreement to use services taught by The Masters Circle, Defendants engaged in a nationwide conspiracy designed to induce patients to pay for unneeded or excessive chiropractic care to make The Masters Circle and its members more prosperous.

Plaintiffs have proposed four possible classes, hereunder listed in order of Plaintiffs' preference:

> **PROPOSED CLASS ONE** All persons who are past, current and future patients who (1) have been treated by an Iowa chiropractor who has been or is a member of Markson Management, The Masters, LLC or The Masters Circle; and (2) were prescribed long-term care up-front by the chiropractor. "Long-term care" is defined as more than twelve (12) chiropractic sessions.[11] (Class Representative[s]: Trevor Rhiner, Cynthia Christian)

> **PROPOSED CLASS TWO** All persons who are past, current and future patients who (1) have been treated by an Iowa chiropractor who has been or is a member of Markson Management, The Masters, LLC or The Masters Circle; (2) were prescribed long-term care up-front by the chiropractor ("long-term care" is defined as more than twelve (12) chiropractic session); and (3) pre-paid the chiropractor for these sessions. (Class Representative: Cynthia Christian)

> **PROPOSED CLASS THREE** All persons who are past, current and future patients who (1) have been treated by an Iowa chiropractor who has been or is a member of

---

[11] In their Reply, Plaintiffs clarify that they intend this putative Plaintiff class to "include patients who were prescribed 12 sessions or more upfront [sic] and paid for those sessions (not prepaid)." Pls.' Reply Br. 15, ECF No. 192.

Markson Management, The Masters, LLC or The Masters Circle; and (2) were pre-scribed long-term care up-front by the chiropractor ("long-term care" is defined as three months of care or forty-eight chiropractic sessions, whichever is shorter). (Class Representative: Cynthia Christian)

**PROPOSED CLASS FOUR** All persons who are past, current and future patients who (1) have been treated by an Iowa chiropractor who has been or is a member of Markson Management, The Masters, LLC or The Masters Circle; (2) were prescribed long-term care up-front by the chiropractor ("long-term care" is defined as three months of care or forty-eight chiropractic sessions, whichever is shorter); and (3) pre-paid the chiropractor for these sessions. (Class Representative: Cynthia Christian)

Pls.' Mot. for Class Cert. 1-2, ECF No. 161.

Plaintiffs contend that each of the above definitions provides clear and objective criteria by which the certified class could be identified. Plaintiffs argue that The Masters Circle will have records of those chiropractors who are party to this suit, and that, in turn, those chiropractors will have records indicating which clients were prescribed up-front long-term care, thereby identifying eligible class members.

## II. DISCUSSION

### A. Plaintiffs' Claims

#### 1. Unjust Enrichment

Plaintiffs' claim of common injury is predicated upon Defendants' alleged unjust enrichment at Plaintiffs' expense. "Unjust enrichment is a doctrine that 'evolved from the most basic legal concept of preventing injustice.'" In re Estate of Roethler, 801 N.W.2d 833, 845 (Iowa 2011) (quoting State Dep't of Human Servs. ex. rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 149 (Iowa 2001)). Under Iowa law, unjust enrichment, though "referred to as a quasi-contract theory," is "equitable in nature." Unisys Corp., 637 N.W.2d at 154. The Iowa Supreme Court has held that the remedy is "deeply engrained" in Iowa law and applies "across many areas of the law, such as contract and tort, but it also occupies much territory that is its sole preserve" making it "an open-ended, broad theory of restitution." Id. at 149-50 (internal quotation marks omitted).

"Recovery based on unjust enrichment can be distilled into three basic elements of recovery." Id. at 154. Those elements are "(1) defendant[s] w[ere] enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff[s]; and (3) it is unjust to allow the defendant[s] to retain the benefit under the circumstances." Id. at 154-55. "[P]laintiff[s] seeking recovery under this doctrine must prove the defendant[s] received a benefit that in equity belongs to the plaintiff[s]." Slade v. M.L.E. Inv. Co., 566 N.W.2d 503, 506 (Iowa 1997). The benefit need not "be conferred directly by the plaintiff[s]," instead, "[t]he critical inquiry is that the benefit received be at the expense of the plaintiff[s]." Unisys Corp., 637 N.W.2d at 155. These principles are incorporated, hereunder, in the analysis of the requested class certification.

### 2. Civil Conspiracy

Plaintiffs' second cause of action, and only cause of action against The Masters Circle, is civil conspiracy, with unjust enrichment as the sole underlying wrong. "Under Iowa law, '[a] conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish by unlawful means some purpose not in itself unlawful.'" Wright v. Brooke Group Ltd., 652 N.W.2d 159, 171 (Iowa 2002) (alteration in the original) (quoting Basic Chems., Inc. v. Benson, 251 N.W.2d 220, 232 (Iowa 1977)). "Civil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the con-spiracy [that] gives rise to the action." Id. at 172 (alteration in the original) (quoting Basic Chems., 251 N.W.2d at 233). Because "conspiracy is merely an avenue for imposing vicarious liability on a party[,] . . . the wrongful conduct taken by a co-conspirator must itself be action-able." Id. "[U]nless actual damage has resulted from something done by one or more of the conspirators in furtherance of the object of the conspiracy, no civil action lies against anyone." S. N.Y. Ry., Inc. v. Fort Dodge, Des Moines & S. Ry. Co., 316 N.W.2d 840, 844 (Iowa 1982).

### B. Class Action Certification Standard

District courts have broad discretion in determining whether a class should be certified under Federal Rule of Civil Procedure 23. In re Milk Prods. Antitrust Litig., 195 F.3d 430, 436

(8th Cir. 1999). "To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." In re St. Jude Med., Inc., 425 F.3d 1116, 1119 (8th Cir. 2005). Courts have also recognized, in addition to the requirements of Rule 23(a) and (b), two "implicit" prerequisites for class certification: (1) "that the class definition is drafted to ensure that membership is capable of ascertainment under some objective standard"; and (2) "that all class representatives are in fact members of the proposed class." In re Teflon Prods. Liab. Litig., 254 F.R.D. 354, 360 (S.D. Iowa 2008) (internal quotation marks omitted); see also Liles v. Am. Corrective Counseling Servs. Inc., 231 F.R.D. 565, 571 (S.D. Iowa 2005) (same).

### 1. Rule 23(a)

To be eligible for class certification, Rule 23(a) requires that

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see also Bennett v. Nucor Corp., 656 F.3d 802, 814 (8th Cir. 2011), petition for cert. filed, (U.S. Jan. 20, 2012) (Nos. 11-917, 11-938) (same). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (internal quotation marks omitted).

A district court "must conduct a 'rigorous analysis' to determine whether the prerequisites for a class action under Rule 23(a) are satisfied." Rattray v. Woodbury Cnty., IA, 614 F.3d 831, 835 (8th Cir. 2010) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)). "Though class certification is not the time to address the merits of the parties' claims and defenses, the 'rigorous analysis' under Rule 23 must involve consideration of what the parties must prove." Elizabeth M. v. Monenez, 458 F.3d 779, 786 (8th Cir. 2006). Therefore, in evaluating Plaintiffs' underlying claim, the "rigorous analysis" may "entail some overlap with the

merits." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2551 (2011); <u>see also</u> <u>Blades v. Monsanto Co.</u>, 400 F.3d 562, 567 (8th Cir. 2005) ("The preliminary inquiry at the class certification stage may require the court to resolve disputes going to the factual setting of the case, and such disputes may overlap the merits of the case."). However, any dispute between the parties "going to the factual setting of the case . . . may be resolved only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, if the plaintiff['s'] general allegations were true, to make out a prima facie case for the class." <u>Blades</u>, 400 F.3d at 567.

### a. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." While "no arbitrary rules regarding the necessary size of classes have been established," <u>Belles v. Schweiker</u>, 720 F.2d 509, 515 (8th Cir. 1983), courts may consider <u>inter alia</u> the number of persons involved in the class, the nature of the action, the value of each individual claim, and the inconvenience of trying individual suits. <u>Paxton v. Union Nat'l Bank</u>, 688 F.2d 552, 559-60 (8th Cir. 1982). Defendants "do not challenge whether Plaintiffs have met the numerosity requirement," Defs.' Resp. Br. 24, ECF No. 184, and the record demonstrates that there are at least seventeen chiropractors in Iowa who were or are members of The Masters Circle,[12] one of whom attests to treating over 3,000 patients a month.[13] In light of Plaintiffs' allegation that each patient treated by one of these member chiropractors is a potential class member, it is evident that, in the aggregate, the total number of patients purported to be potential class members is sufficiently numerous to make joinder impracticable and, therefore, satisfies

---

[12] Plaintiffs, citing Markson's Affidavit, contend that, as of 2005, "there were 17 Iowa chiropractors who were current members of The Masters Circle . . . [and] another 21 Iowa residents who are former members." Pls.' Mot. Br. 19, ECF No. 161-1.

[13] Kerkhoff also reported that he treated approximately 150 chiropractic patients per week in 2005.

numerosity.  See, e.g., Walls v. Sagamore Ins. Co., 274 F.R.D. 243, 253-54 (W.D. Ark. 2011) (finding an alleged class of hundreds, if not thousands, sufficiently numerous).

### b. Commonality

A core question in this case is commonality, which requires that there be "questions of law or fact common to the class."  Bennett, 656 F.3d at 814 (quoting Fed. R. Civ. P. 23(a)).  "[A] proponent of certification must satisfy the commonality requirement by showing that a classwide proceeding will 'generate common *answers* apt to drive the resolution of the litigation.'"  Id. (quoting Dukes, 131 S. Ct. at 2551).  "This does not mean merely that they have all suffered a violation of the same provision of law," but rather that their claims "depend upon a common contention."  Dukes, 131 S. Ct. at 2551.  "That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.  Class members are not required to be identically situated, nor must every question of law or fact be common to every member of the class.  Paxton, 688 F.2d at 561.  For the purposes of Rule 23(a)(2), even a single common question of law or fact might suffice.  See Dukes, 131 S. Ct. at 2556.  However, "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers."  Id. at 2551 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)) (internal quotation mark omitted).

Plaintiffs aver that all class members "have a well-defined commonality of interest with respect to the questions of law and fact, and the relief sought is common to the entire class." Pls.' Mot. Br. 31, ECF No. 161-1.  Plaintiffs' common complaint arises from The Masters Circle's alleged agreement with Kerkhoff and other Iowa chiropractors to sell medically unnecessary treatments up-front without regard to the individual situation of each patient. Plaintiffs allege that this agreement, and the subsequent actions of the Defendants predicated upon this agreement, resulted in Defendants' unjust enrichment at the class members' expense.

Accordingly, Plaintiffs assert that the wrong is determined solely by the agreement and actions of the Defendants, and that the individual situation of each patient is inconsequential, as long-term prescriptions are never medically justified.[14]  The common issues of law and fact are set out by Plaintiffs as follows:

---

[14] Plaintiffs' contention that long-term prescriptions are never medically justified is supported solely through the reports and deposition testimonies of three chiropractors designated as Plaintiffs' expert witnesses.  Defendants have moved to strike the testimonies of Plaintiffs' purported experts, citing American Honda Motor Co., Inc. v. Allen, 600 F.3d 813, 815-16 (7th Cir. 2010), arguing that the reports do not satisfy the expert report admissibility requirements of Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993); Plaintiffs resist.

The Eighth Circuit recently distinguished the approach adopted in American Honda, stating that it was "not convinced that the approach of American Honda would be the most workable in complex litigation or that it would serve case management better."  In re Zurn Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 612 (8th Cir. 2011).  The court went on to reaffirm that, in this circuit, district courts have never been required "to decide conclusively at the class certification stage what evidence will ultimately be admissible at trial."  Id. at 611-12 (considering the discussion in dicta by the Court in Dukes regarding the admissibility of expert witness testimony, but finding no reason to abandon the Eighth Circuit precedent set forth in Blades v. Monsanto Co., 400 F.3d at 569, regarding the admissibility of expert testimony at the class certification stage).  The Zurn court went on to affirm the district's court use of a "tailored" Daubert analysis at the class certification stage under which the district court considered "the reliability of the expert testimony in light of the existing state of the evidence and with Rule 23's requirements in mind."  Id. at 612.  The court held that this approach was justified in light of the "inherently tentative" nature of class certification, which is subject to "revisiting upon completion of full discovery."  Id. (internal quotation marks omitted).

"Daubert makes clear that the district court must 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  J.B. Hunt Transp., Inc. v. Gen. Motors Corp., 243 F.3d 441, 444 (8th Cir. 2001) (alteration in original) (quoting Daubert, 509 U.S. at 591).  While the experts' testimony may well be relevant to the concern at hand, as they each testify, based largely upon their experience in the field, that long-term chiropractic plans are never medically justified, the Court notes the highly tenuous nature of the evidence put forth by Plaintiffs and their experts to demonstrate the reliability of the experts' opinions, even under the less burdensome standard adopted by the Eighth Circuit.  Plaintiffs' experts' experience may be laudable, but the experts' failure to directly rely on scientific studies and scholarly work, beyond listing works allegedly consulted, and lack of independent research on this issue proves troublesome.  The Court, however, will forego the preliminary Daubert analysis as, even if the Court were to consider the testimony of Plaintiffs' alleged experts, Plaintiffs are unable to meet the class certification standard.

a. Whether Defendants combined, agreed, and conspired to use unethical practices, misinformation, scare tactics, manipulation and high-pressure sales tactics to expand their patient bases and derive income for the Defendants individually and for the [D]efendant [The] Masters Circle.

b. Whether Defendants combined, agreed, and conspired to use unethical practices, misinformation, scare tactics, manipulation and high-pressure sales tactics to retain current patients in order to maintain the patient base and continue the stream of income for the individual Defendant chiropractors and for the Defendant [The] Masters Circle.

c. Whether the acts or omissions alleged herein constitute an unlawful conspiracy under the laws of Iowa.

d. Whether the acts and or [sic] omissions alleged herein constitute an unlawful enterprise under the laws of Iowa.

e. Whether any or all of the above actions caused injury or damage to the named Plaintiffs and to the Plaintiff class.

f. Whether Defendants were unjustly enriched at the expense of the Plaintiff class through their practices aimed at the Plaintiff class.

g. Whether the agreement to prescribe chiropractic care up-front to chiropractic patients, without regard to their individual needs or how they would respond to care constitutes a common injury to the patients and a common measure of damages to the patient members of the Plaintiff class.

h. Whether the teachings of the co-conspirators led the Iowa chiropractors to prescribe long-term care up-front to Iowa patients irrespective of their individual needs or how they would respond to care so that the chiropractor could increase his or her wealth.

i. Whether the teachings of the co-conspirators led the Iowa chiropractors to prescribe long-term care up-front to Iowa patients irrespective of their individual needs or how they would respond to care and to have the patients pre-pay for this long-term care so that the chiropractor could increase his or her wealth.

j. Whether the named Plaintiffs and the Plaintiff class are entitled to declaratory and/or injunctive relief.

Id. at 32-33.

14

As the Supreme Court noted in <u>Dukes</u>, the requirement that there be common questions of law or fact can easily be misread as "[a]ny competently crafted class complaint literally raises common 'questions.'" <u>Dukes</u>, 131 S. Ct. at 2550-51 (quoting Nagareda, <u>supra</u>, at 131-32). To emphasize this point, the <u>Dukes</u> Court enumerated questions that, though common to the purported class members, were insufficient to satisfy the commonality requirement.[15] <u>Id.</u> at 2551. The Court elaborated that the common question "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id.</u> Plaintiffs raise the above listed common questions, however, "[r]eciting these questions is not sufficient to obtain class certification." <u>Id.</u> "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." <u>Id.</u> (alteration in the original) (quoting Nagareda, <u>supra</u>, at 132).

In <u>Dukes</u>, the Supreme Court reversed the lower court's certification of a plaintiff class comprised of approximately one and one-half million current and former female Wal-Mart employees who alleged that their supervisors had denied them discretionary pay increases and promotions on the basis of gender in violation of Title VII. <u>Id.</u> at 2547, 2561. The Court, noting that the "crux of the inquiry" under Title VII claim is "the reason for a particular employment decision," held that "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." <u>Id.</u> at 2552 (internal quotation marks omitted).

Plaintiffs face similar insurmountable hurdles in the present case. Plaintiffs artfully navigate around the predominately individualized inquiry of unjust enrichment by alleging that

---

[15] Those questions included: "Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?" <u>Dukes</u> 131 S. Ct. at 2551.

prescription of long-term up-front care is inherently wrongful conduct that unjustly enriches Defendants regardless of a patient's individualized care. However, as previously discussed, unjust enrichment requires answering the individualized inquiry as to whether Defendants received a benefit "at the expense of [that] plaintiff." Unisys Corp., 637 N.W.2d at 155; see also In re Bisphenol-A(BPA) Polycarbonate Plastic Prods. Liab. Litig., 276 F.R.D. 336, 344 (W.D. Mo. 2011) (refusing to adopt plaintiffs' contention "that damages for unjust enrichment can be measured simply by calculating the benefit retained by Defendants," and holding that "determining whether a defendant's retention of the benefit . . . is 'unjust' requires considering what a particular plaintiff received in exchange for bestowing that benefit").

Also fatal under the commonality inquiry is that Plaintiffs must have suffered the same injury, which requires more than a violation of the same area of law, or, as here, the invocation of a common equitable remedy. See Bennett, 656 F.3d at 814 (citing Dukes, 131 S. Ct. at 2551). The mere fact that all Plaintiffs allege unjust enrichment "gives no cause to believe that all their claims can productively be litigated at once." Dukes, 131 S. Ct. at 2551.

As in Dukes, where the Court held that claims at issue involved "literally millions of employment decisions at once," id. at 2552, the present case contemplates thousands of individual diagnoses. Just as each employee's qualification and each manager's motivation for denying promotion must be considered in Dukes, each chiropractor's motivation and disclosure as well as each patient's physical condition and potentially informed consent is at issue. Cf. McClean v. Health Sys., Inc., No. 11-03037-CV-S-DGK, 2012 WL 607217, at *3 (W.D. Mo. Feb. 23, 2012) (finding that an unjust enrichment claim, among other claims, satisfied commonality because it was dependent upon "system-wide policies which apply *uniformly* to all class members" (emphasis added)). Further, that Defendants' are members of The Masters Circle does not in any way conclusively establish that each member chiropractor's diagnosis and prescription to each proposed Plaintiff class member was uniformly applied under The Masters Circle's policies. There is a fundamental difference between establishing a class of employees subject to

a generalized practice of an employer, as contemplated in <u>General Telephone Co. of Southwest v. Falcon</u>, 457 U.S. 147 (1982), and determining whether mere membership in an organization, even with a pledge to follow the organization's advice, adequately creates a like circumstance for class membership in that all member chiropractors are active members, follow the advice of the organization, do so without regard to their own professional judgment, do so without any concomitant benefit to the patient, and do so uniformly such that they are thereby unjustly enriched.

To satisfy commonality, Plaintiffs claim must be based upon a common contention that is subject to classwide resolution. In <u>Dukes</u>, that concern was "*why was I disfavored*." <u>Dukes</u>, 131 S. Ct. at 2552. In the present case, the crucial question, "*was my chiropractor unjustly enriched solely on the basis of The Masters Circle's marketing techniques,*" is no more subject to common resolution than the claim denied class certification in <u>Dukes</u>.

Because "civil conspiracy is not actionable in and of itself, but depends on the presence of an underlying tort," Plaintiffs' civil conspiracy claim necessarily fails the commonality test for the same reason as Plaintiff's unjust enrichment claim. See <u>Estate of Mahoney v. R.J. Reynolds Tobacco Co.</u>, 204 F.R.D. 150, 154, 160 (S.D. Iowa 2011).

### c. **Typicality**

Typicality, the third factor under Rule 23(a), tends to merge with the commonality requirement as "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff[s'] claim[s] and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." <u>Dukes</u>, 131 S. Ct. at 2551 n.5 (quoting <u>Gen. Tel. Co.</u>, 457 U.S. at 157 n.13). Typicality requires that there are "other members of the class who have the same or similar grievances as the plaintiff." <u>Alpern v. UtiliCorp United, Inc.</u>, 84 F.3d 1525, 1540 (8th Cir. 1996) (internal quotation marks omitted). "The burden is 'fairly easily met so long as other class members have claims similar to the named plaintiff.'" <u>Id.</u> (quoting <u>DeBoer v. Mellon Mortg. Co.</u>, 64 F.3d 1171, 1174 (8th Cir. 1995)). Typicality is generally satisfied when "the

claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory," Paxton, 688 F.2d at 561-62 (internal quotation marks omitted), despite "the presence of factual variations," Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir. 1977).

Plaintiffs allege that the claims are typical of the putative Plaintiff class "because every patient's claim depends on a showing of the conduct by Defendants giving rise to the right of the Plaintiffs to the relief sought, and every patient's claim arises from the same operative facts." Pls.' Mot. Br. 41, ECF No. 161-1. Specifically, Plaintiffs argue that "[t]he named Plaintiffs were prescribed long-term care and/or paid for long-term care that was pre-set and was medically unnecessary. The members of the proposed class have the same or similar grievances against Defendants, and their claims are based on the same legal theory – that of unjust enrichment." Id. However, "[t]he presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." Elizabeth M., 458 F.3d at 787.

The typicality of Plaintiffs' claims is undermined by the inherent case-by-case nature of relief sought under unjust enrichment. See, e.g., Neidhardt v. TCI Midcontinent LLC, No. 1:09-cv-078, 2011 WL 1527030, at *5 (D.N.D. Apr. 20, 2011) (finding that typicality had not been satisfied as "individual questions as to each class member [would] remain"). Despite Plaintiffs' contention to the contrary, unjust enrichment requires an individualized determination of how much each patient has been damaged, which in the present case is premised upon the medical necessity and any associated benefits of the care given. To prove unjust enrichment, Plaintiffs must demonstrate that Defendants profited at Plaintiffs' expense; Plaintiffs must show that Defendants retained a benefit in excess of Plaintiffs' gain. Plaintiffs seek return of all monies paid for any prescribed long-term care, yet Plaintiffs do not offer, nor can the Court find, any legal precedent to compel such relief on an unjust enrichment claim.

Iowa law makes clear that unjust enrichment entitles the wronged party to restitution. Unisys Corp., 637 N.W.2d at 153. "Restitution measures the remedy by the gain obtained by the

defendant, and seeks disgorgement of that gain." Id. Damages, in contrast with restitution, "are measured by the plaintiff[s'] loss, and seek to provide compensation for that loss." Id. Plaintiffs take this distinction and equate "gain" with all monies paid to Defendants. Plaintiffs' reasoning is not persuasive. In the present case, the focus is on the wrongful gain of Defendants and not the loss incurred by Plaintiffs; therefore, restitution is limited to that gain which was wrongfully obtained – that benefit for which a party is "obligated by 'natural justice and equity to refund.'" Id. at 154 n.1 (quoting Iconco v. Jensen Constr. Co., 622 F.2d 1291, 1295 (8th Cir. 1980)).

Both Rhiner and Christian admitted that they found at least *some* relief under Kerkhoff's care. Under the theory of unjust enrichment, neither the named parties, nor the putative Plaintiff class as a whole, would be entitled to the return of monies paid for benefits they in fact received. The individual benefit must be measured in light of each patient's medical need and the particularized level of relief received. Accordingly, typicality cannot be found, as the cause of action necessitates individual inquiry.

The focus under Rule 23(a)(3) is on the named Plaintiffs' situation and their typicality with the members of the putative Plaintiff class. The proposed class faces additional difficulties in establishing the typicality of Rhiner's circumstance as he received treatment from Kerkhoff subsequent to Kerkhoff's membership with The Masters but years before his enrollment with The Masters Circle. The ambiguous way in which Plaintiffs define the possible John Does in order to accommodate Rhiner, which necessarily accommodates lapses in membership on the part of the putative Defendant chiropractors in the entities at issue, as discussed infra Part II.B.2.a., opens the class to a myriad of possibilities that further prevents the Court from finding that Rhiner's claim is sufficiently typical. Similarly, though Christian's claim includes up-front payment for long-term care prescribed by Kerkhoff, who was then a member of The Masters Circle, her claim still lacks adequate typicality due to the individualized concerns raised by unjust enrichment, especially in light of the benefit she admits she received.

Furthermore, based upon Plaintiffs' allegations of leveraging and scare tactics purportedly promoted by The Masters Circle and employed by their members, the Court would need to inquire into the tactics used by each putative Defendant chiropractor, as some patients may have been well informed and knowingly agreed to long-term care for therapeutic or preventative reasons. See In re Teflon, 254 F.R.D. at 366 (denying class certification based on a failure to meet typicality due, in part, to the individualized inquiry "necessary to identify the alleged representation at issue, and the date on which the representation was made" to each plaintiff). Plaintiffs cannot maintain a claim for unjust enrichment if treatment were entered into pursuant to full disclosure or if the recommended or completed treatment reflected the informed desire of the patient. As in the present case, "limitations exist [in meeting the typicality requirement] when the claimed injury is tied to a complex course of conduct engaged in by the defendants over a long period of time, as opposed to a single act to which all class members were exposed to equally." In re Baycol Prods. Litig., 218 F.R.D. 197, 206 (D. Minn. 2003) (finding that claims were not typical when the individual class members were prescribed different dosages of the same drug at different times, while concurrently taking a variety of other drugs). This Court is persuaded that, in situations such as this, "where claims *turn* on individual facts, no economy is achieved, and the typicality requirement cannot be met." Estate of Mahoney, 204 F.R.D. at 154; see also In re Teflon, 254 F.R.D. at 365 (same).

As addressed under commonality, the civil conspiracy claim also must fail in tandem on the question of typicality. To be actionable, a civil conspiracy claim must result in cognizable harm to a plaintiff. See, e.g., S. N.Y. Ry., 316 N.W.2d at 844 (affirming the trial court's finding that plaintiffs failed to prove their civil conspiracy claim when plaintiffs failed to show inter alia "evidence that any allegedly conspiratorial act resulted in injury to plaintiffs, or that plaintiffs have sustained damages as a result of such acts allegedly done by any defendant"). Establishing damages, as previously discussed, requires an individualized inquiry, which precludes certification of the civil conspiracy claim under typicality. See Estate of Mahoney, 204 F.R.D. at 160

(denying class certification of plaintiffs' civil conspiracy claim, noting that typicality could not be met since proof of the underlying claim to civil conspiracy would "depend on numerous individual issues" requiring a "case-by-case analysis of each Class member's exposure to defendants' advertising and other industry propaganda").

### d. Adequacy

Rule 23(a)(4) focuses on whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." Paxton, 688 F.2d at 562-63. This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc., v. Windsor, 521 U.S. 591, 625 (1997).

Plaintiffs have no greater ease meeting this factor than commonality and typicality. In addition to those issues raised under typicality, such as Rhiner receiving treatment from Kerkhoff while Kerkhoff's membership in the entities at issue had lapsed, and the ambiguous nature of the treatment "prescribed" to Rhiner as discussed infra Part II.B.2.a., Plaintiffs are unable to demonstrate their ability to adequately protect the interests of the putative Plaintiff class from claim splitting, thus potentially precluding any remaining claims held by individual members of the putative Plaintiff class under the doctrines of claim preclusion or res judicata. See, e.g., Restatement (Second) of Judgments § 24 ("When a valid and final judgment rendered in an action extinguishes the plaintiff's claim[,] . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.").

"Among other requirements, 'a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim.'" In re Teflon, 254 F.R.D. at 367 (quoting Yankton Sioux Tribe v. United States Dep't of Health & Human Servs., 533 F.3d 634, 641 (8th Cir. 2008)) (internal quotation marks omitted). In the present case, establishing claims for unjust enrichment necessarily requires consideration of the disclosures made by each Defendant

chiropractor and the degree of benefit received and harm felt by each member of the putative Plaintiff class. Accordingly, any trial on the merits of the claims of the proposed Plaintiffs' class would risk a waiver of any claims of individual Plaintiff class members, potentially precluding claims for misrepresentation and personal injury. See id. at 368 (denying class certification while finding that "*any possibility* that a subsequent court could determine that claims for personal injury . . . were barred by *res judicata* prevents the named plaintiffs' interests from being fully aligned with those of the class"); see also Thompson v. Am. Tobacco Co., Inc., 189 F.R.D. 544, 550-51 (D. Minn. 1999) (finding "that the named Plaintiffs' efforts to reserve personal injury and damage claims may, in fact, jeopardize the class members' rights to bring such claims in a subsequent case," therefore the "possible prejudice to class members [wa]s simply too great for the [c]ourt to conclude that the named Plaintiffs' interest [we]re aligned with those of the class"). In light of these concerns, the Court finds that the named Plaintiffs' claims cannot adequately protect the interests of the putative Plaintiff class.

## 2. Implicit Requirements

In addition to the Rule 23(a) factors, courts consider two implicit factors: (1) whether the class is ascertainable, and (2) whether the proposed class representatives actually satisfy the proffered class definitions. See, e.g., Sagamore, 274 F.R.D. at 250-51; Liles, 231 F.R.D. at 571.

### a. Ascertainability

"Rule 23 requires that any order certifying the class 'must define the class.'" Riedel v. XTO Energy Inc., 257 F.R.D. 494, 506 (E.D. Ark. 2009) (quoting Fed. R. Civ. P. 23(c)). "Although the identity of individual class members need not be ascertained before class certification, the membership of the class must be ascertainable." Id. (quoting Manual for Complex Litigation (Fourth) § 21.222 (2004)). To ascertain the class, "[t]he Court should not be required to resort to speculation, or engage in lengthy, individualized inquiries." In re Teflon, 254 F.R.D. at 361 (internal citation omitted). While Plaintiffs allege that an objective means of ascertaining the putative Plaintiff class exists, their own named Plaintiffs demonstrate the

complexity of identifying class members.  Plaintiffs suggest that the documents of The Masters Circle will disclose the identity of all Defendant John Does, and that the each found Defendant chiropractor will have documents identifying putative Plaintiff class members.  However, Plaintiffs' proffered definitions do not accommodate gaps in membership, as they seemingly require by naming Rhiner as a plaintiff even though he was not treated by a chiropractor that was *presently* a member of one of the entities in question.  Plaintiffs provide no clear guideline of how the Court is to determine how long a former member can still be identified as following the practices of these entities.  While the Court could later amend the definition under Rule 23(c)(1)(B)-(C), see, e.g., Hammers v. JP's Sw. Foods, L.L.C., 267 F.R.D. 284, 290 (W.D. Mo. 2010), resolving the shortcoming in the Plaintiffs' class definition is no simplistic task, as is evidenced by the history of this case.

The Court further doubts the ascertainability of the class as Plaintiffs provide no clear understanding of what they intend "prescribed" to mean.  In Rhiner's case, Kerkhoff opined that Rhiner would require a year's worth of care; however, no agreement was signed, and no binding commitment was made between those parties.  In contrast, Christian signed and paid for six months of treatment at the onset of her chiropractic care.  While Plaintiffs clarify in their Reply that a class member must have been "prescribed 12 sessions or more upfront [sic] and [have] paid for those sessions (not prepaid)," the Court finds this clarification does not cure the obscurity.  Pls.' Reply Br. 15, ECF No. 192.  "Prescribed" remains nondescript, leaving the Court to conduct individualized reviews to determine whether or not a patient's conversation with the chiropractor constituted merely a discussion or rose to the level of a prescribed treatment.  This proves particularly troublesome as undoubtedly individual chiropractors differed in how they presented their plans, how they disclosed their concerns or practices, and whether they obtained the informed consent of their patients.  See Duchardt v. Midland Nat'l Life Ins. Co., 265 F.R.D. 436, 444 (S.D. Iowa 2009) (denying class certification for a proposed subclass finding inter alia the relief sought required extensive individualized inquiry to ascertain the class).

23

### b.  Whether the Proposed Representatives Satisfy the Definition

"The second 'implicit requirement' of Rule 23 is that each proposed representative is in fact a member of the proposed class . . . ."  In re Teflon, 254 F.R.D. at 363.  While Christian necessarily meets the definitions Plaintiffs proffer, as she pre-paid for a documented six months of treatment under the care of Kerkhoff, who was at that time a member of The Masters Circle, for the above-mentioned reasons, the Court finds that the proposed class does not appropriately accommodate Rhiner's circumstances.  See id. (holding that the court could not "in good conscience grant certification" under the second implicit requirement when the court was unable to "establish membership with objective certainty").

### 3.  Rule 23(b)(3)

Even if Plaintiffs could overcome the pervasive shortfalls under Rule 23(a), they remain unable to meet the standard imposed under Rule 23(b).  As stated in Rule 23(b)(3), Plaintiffs must demonstrate that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### a.  Predominance

"Rule 23(b)(3)'s requirement that common issues of fact or law must predominate over individual questions 'tests whether proposed class [members] are sufficiently cohesive to warrant adjudication by representation.'"  In re Zurn, 644 F.3d at 618 (alteration in the original) (quoting Amchem, 521 U.S. at 623).  "The question at class certification is not whether the plaintiffs have already proven their claims through common evidence.  Rather, it is whether questions of law or fact capable of resolution through common evidence predominate over individual questions."  Id. at 619.  "Common questions are those for which a prima facie case can be established through common evidence."  Id.  "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an

individual question." Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1029 (8th Cir. 2010) (quoting Blades, 400 F.3d at 566). "Common questions need only predominate; they need not be dispositive of the litigation." Lockwood Motors, Inc. v. Gen. Motors Corp., 162 F.R.D. 569, 580 (D. Minn. 1995).

As Plaintiffs have failed to demonstrate commonality of fact or law, they further fail to meet the more demanding burden under predominance. See Amchem, 521 U.S. at 624. For Defendants to be unjustly enriched, they must retain a benefit at each Plaintiff's detriment. See, e.g., Walsh Chiropractic, Ltd, v. StrataCare, Inc., No. 09-cv-1061-MJR, 2011 WL 4336727, at *10 (S.D. Ill. Sept. 14, 2011) (applying a similar analysis for a claim of unjust enrichment under Illinois law and denying class certification finding that individualized inquiries predominated when determining whether defendant was unjustly enriched). The court in In re Bisphenol-A(BPA) Polycarbonate Plastic Products Liability Litigation, 276 F.R.D. 336, 345 (W.D. Mo. 2011), while considering plaintiffs' claim of unjust enrichment, acknowledged that "individu-alized damage inquiries do not mean there are no issues in common, and that predominance is not destroyed by the mere existence of individual issues," but concluded, nonetheless, that "the extent of any benefit received by [p]laintiffs would be a factor in determining whether and to what extent [d]efendants' retention of money is unjust." Since "[n]ot all [p]laintiffs received the same benefit," the court reasoned that the individualized inquiry into what benefit was received was not common and, in light of this and other concerns such as a plaintiff's informed involve-ment with defendants' product, common questions did not predominate. Id. at 345-46. Simi-larly, a determination of unjust enrichment in the present case requires consideration of inter alia the condition of each proposed Plaintiff, the treatment recommended by each patient's chiro-practor, the means by which the doctor represented the suggested treatment, whether each pre-scription conforms to The Masters Circle's policies, the degree of informed consent received from each patient, any associated benefit, and, ultimately, whether each proposed Plaintiff received medically unnecessary treatments. See In re St. Jude Med., Inc., 522 F.3d 836, 840 (8th

Cir. 2008) (discussing a claim for consumer fraud and holding that the need for "plaintiff-by-plaintiff determinations means that common issues will not predominate").

Likewise, in In re Baycol Products Litigation, 265 F.R.D. 453, 457-58 (D. Minn. 2008), the court denied class certification on an unjust enrichment claim noting that, in order to succeed on the claim, "plaintiffs would have to demonstrate that they were either injured by [defendants' product], or that [defendants' product] did not provide them any health benefits." See also id. (holding that "[t]he evidence supports the conclusion that individual issues of fact predominate with respect to whether [defendants' product] benefitted or harmed any particular person" since it would require consideration of each "particular plaintiff's medical history"). Plaintiffs face the same barrier in the present case as prescribed treatments are based upon a patient's symptoms, medical history, injury, and condition, making the review of a chiropractor's recommended treatment highly individualized. Plaintiffs cannot generally demonstrate that each patient ultimately did not need some level of the extended care prescribed; therefore, class treatment is precluded under the present cause of action.[16] See Klay v. Humana, Inc., 382 F.3d 1241, 1264, 1267 (11th Cir. 2004) (denying class certification sought on multiple grounds, including unjust enrichment, because "individualized factual determinations overwhelm the common issues of fact and law" when each putative class member would have to prove that they were underpaid by the defendant insurance company on each particular occasion).

---

[16] None of the definitions proffered by Plaintiffs cure this problem. The first definition requires that each Plaintiff have been prescribed twelve sessions but omits the requirement of up-front payment. This does not, however, alleviate the Court's need to conduct an individualized inquiry in order to ascertain the medical necessity of treatments and, therefore, the resulting unjust enrichment of Defendants. Plaintiffs' second and fourth definitions fall prey to the same deficiencies, as the added requirement of pre-payment does not make the loss felt by each individual Plaintiff any more uniform. The third and fourth definitions also vary the definition of "long term" to mean "three months of care or forty-eight chiropractic sessions, whichever is shorter," replacing the "twelve chiropractic sessions" used in the first and second proposed class definitions. Pls.' Mot. 1-2, ECF No. 161. While the existence of any unjust enrichment claim is predicated upon the unnecessary length of treatment, both definitions simply provide a tool of measurement, rather than a solution to the necessary individualized inquiry arising from an unjust enrichment claim.

As discussed in the Court's August 2007 Order, Plaintiffs' sole injury from any alleged conspiracy derives from "treatments for which Plaintiffs paid that were recommended and mandated by The Masters Circle's policies but were medically unnecessary." Brown, 504 F. Supp. 2d at 528. Once again, Plaintiffs are required to demonstrate the complete lack of medical necessity of each treatment, thereby subjecting their civil conspiracy claim to the same deficiencies. See Estate of Mahoney, 204 F.R.D. at 160 (finding that Plaintiffs failed the predominance inquiry since their dependent civil conspiracy claim required the same individualized inquiry as the underlying torts).

The issue of determining medical necessity of care is not the only barrier Plaintiffs face. As the Court addressed, supra Part II.B.2.a., Plaintiffs' problems are compounded by their failure to clearly define when a chiropractor is considered to be following the teachings of one of the entities at issue, requiring yet another individualized inquiry. See Riedel, 257 F.R.D. at 512 (denying class certification after the court found itself "unable to find in this case that the *same evidence* will suffice for each class member to make a prima facie showing" because "individual issues w[ould] predominate"). Coupling these individual concerns with Plaintiffs' lack of clarity regarding the meaning of "prescribed," as previously discussed, this Court is compelled to find that, as to either claim, predominance cannot be met.

### b. Superiority

Class certification is proper where "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As other courts have recognized, "the failure to show predominance spills over onto superiority." In re Prempro, 230 F.R.D. 555, 568 (E.D. Ark. 2005). Relevant factors to be considered in making this determination include

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

27

In re Genetically Modified Rice Litig., 251 F.R.D. 392, 399 (E.D. Mo. 2008) (quoting Fed. R. Civ. P. 23(b)(3)(A)-(D)).  While this is a desirable forum for this litigation, as all members of the proposed Plaintiff class are in Iowa, and the individual claim of each Plaintiff is potentially limited to a modest sum, "[t]he individualized determinations necessary to decide whether an individual would even belong in the class or could establish liability or [the amount of] damages demonstrate that individuals have a strong interest in controlling the prosecution of separate actions." Rattray v. Woodbury Cnty., Iowa, 253 F.R.D. 444, 464 (N.D. Iowa 2008), aff'd, 614 F.3d 831 (8th Cir. 2010).  Furthermore, superiority is undermined by the individualized nature of even the named Plaintiffs' circumstances, since Rhiner and Christian received different types of treatments, on varying schedules, for disparate amounts of time.  Accordingly, the Court finds that superiority is not met.  Id. at 465 ("Thus, while the logistics of a multiplicity of similar actions is daunting, the logistics of attempting to create a class action out of what are, in reality, a myriad of individualized claims is even more daunting."); see also Walsh v. Principal Life Ins. Co., 266 F.R.D. 232, 260 (S.D. Iowa 2010) (finding that common questions did not predominate and that the "individualized inquiries would significantly impede management of th[e] case as a class action," and therefore concluding that class treatment was "not superior to individual litigation").

### 4.  Injunction

As an alternative to Rule 23(b)(3), Plaintiffs claim that the class is certifiable under Rule 23(b)(2), which provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  "Class certification under Rule 23(b)(2) is proper only when the primary relief sought is declaratory or injunctive." In re St. Jude Med., Inc., 425 F.3d at 1121.  "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is

such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" <u>Dukes</u>, 131 S. Ct. at 2557 (quoting Nagareda, <u>supra</u>, at 132).

While Rule 23(b)(2) is not subject to the predominance requirement of Rule 23(b)(3), "class claims thereunder still must be cohesive." <u>Avritt</u>, 615 F.3d at 1035 (internal quotation marks omitted). In light of class members' inability to opt out of Rule 23(b)(2) classes, cohesiveness is even more important for a Rule 23(b)(2) class than predominance for a Rule 23(b)(3) class. <u>Id.</u> Under Rule 23(b)(2), damages can be "sought incidentally to the prayer for injunctive relief." <u>DeBoer</u>, 64 F.3d at 1175 (quoting <u>Paxton</u>, 688 F.2d at 563). However, incidental damages "do not depend 'in any significant way on the intangible, subjective difference of each class member's circumstance.'" <u>Robinson v. Sears, Roebuck & Co.</u>, 111 F. Supp. 2d 1101, 1126-27 (E.D. Ark. 2000) (quoting <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402, 415 (5th Cir. 1998)). Further, Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damage." <u>Dukes</u>, 131 S. Ct. at 2557. Instead, "individualized monetary claims belong in Rule 23(b)(3)." <u>Id.</u> at 2558.

While Plaintiffs now argue that an injunction is the primary relief sought, such a request is not even mentioned in their claims or prayer for relief. Instead, regarding their claim for civil conspiracy, Plaintiffs request "punitive damages to punish and deter Defendants from future similar wrongful conduct."[17] Fourth Am. Compl. ¶ 89, ECF No. 64. Plaintiffs further request "restitution of the amounts paid to Defendants as part of their unethical and misleading practices" in regard to their unjust enrichment claim. <u>Id.</u> ¶ 92. Plaintiffs do request injunctive relief in

---

[17] Plaintiffs further request a judgment

in such amount as will fairly and reasonably compensate Plaintiffs for the injuries and damages sustained, with an award of exemplary damages in such amount as will deter and punish Defendants for the conduct herein, all with pre and post judgment interest at the rate allowed by law, the costs of this action and any other relief the Court deems appropriate.

Fourth Am. Compl. ¶ 89, ECF No. 64.

their Motion for Class Certification. However, this cursory invocation of a remedy lacks any specificity. Even in their Reply, Plaintiffs give no specific directive regarding injunctive relief but simply request a "sweeping reform." Pls.' Reply Br. 36, ECF No. 192.

Rather, the primary remedy sought by the named Plaintiffs is purely monetary, as is confirmed by the deposition testimony of Christian, wherein she definitively states that her primary interest in this case is recouping her expenses.[18] See Avritt, 615 F.3d at 1035-36 (affirming the district court's denial of class certification under Rule 23(b)(2) when the primary remedy sought by the plaintiffs was monetary, not injunctive relief); see also Clayborne v. Omaha Pub. Power Dist., 211 F.R.D. 573, 599-600 (D. Neb. 2002) (finding the compensatory damages requested by the named plaintiffs more than "incidental" when they had to be "assessed based on the individual circumstances of the class representative's work history and personal injury" and therefore would require "individualized analysis of each class member's circumstances").

Further, even if Plaintiffs were primarily seeking injunctive relief, "the mere 'predominance' of a proper (b)(2) injunctive claim does nothing to justify elimination of Rule 23(b)(3)'s procedural protection." Dukes, 131 S. Ct. at 1559. The Dukes Court "fail[ed] to see why [Rule 23(b)(2)] should be read to nullify the[] protections [provided by Rule 23(b)(3)] whenever a plaintiff class, at its option, combines its monetary claims with a request – even a 'predominating

---

[18] Q: And do you have an arrangement that you would be paid as a class representative, some sort of fee for your services as a class representative?
A: No.
Q: And so you are not expecting any sort of fee for that?
A: No.
Q: And no sort of compensation?
A: No, just that – – my expenses that I'm out.
Q: For you?
A: Yeah, my personal expenses that I've paid out.
Q: And I assume that that's really your primary interest in this case?
A: Yes.
Christian Dep. 100:4-20, Defs.' Ex. D, ECF No. 184-5.

request' – for an injunction." Id. This Court is equally unpersuaded and finds Plaintiffs have failed to satisfy the requirements for class certification under Rule 23(b)(2).

## III.   CONCLUSION

Based upon the foregoing analysis, the Court must find that Plaintiffs have failed to satisfy the requirements of Rule 23.  Accordingly, Plaintiffs' Motion for Class Certification (ECF No. 161) must be **denied**.  Defendants' Motion to Strike Expert Testimony (ECF No. 185) is **denied as moot**.

**IT IS SO ORDERED**.

Dated this 22nd day of March, 2012.

_____
JAMES E. GRITZNER, Chief Judge
U.S. DISTRICT COURT